IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL HEAD

          Petitioner,

    v.

WARDEN, ROSS CORRECTIONAL
INSTITUTION,

          Respondent.

CASE NO. 2:12-CV-1161
JUDGE ALGENON L. MARBLEY
Magistrate Judge Elizabeth A. Preston Deavers

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This case involves Petitioner's August 30, 2012 convictions after a jury trial[1] in the Franklin County Court of Common Pleas on aggravated robbery, robbery and felonious assault. The Court of Common Pleas imposed an aggregate term of eighteen years of incarceration.  This matter now is before the Court on the instant petition, Respondent's *Motion to Dismiss,* Petitioner's *Response* and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 9, be **GRANTED** and that this action be **DISMISSED.**

**Facts and Procedural History:**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Antonio Tucker was in need of money because construction work was slow. He hoped to get a little quick cash by helping to set up a drug deal between a willing buyer and a willing seller. The willing seller did not show up when planned, but Tucker went over to a

---

[1] Petitioner elected to be tried by the judge on Count Five of the indictment only, in which he was charged with having a weapon while under disability.  The trial court found him not guilty of this offense.

1

house on Fabron Avenue in Columbus, Ohio, to meet with the buyer anyway. Tucker knew the buyer as "Gutter," a name used by Head.

When Tucker went inside the residence on Fabron Avenue, he was soon approached by a man with a mask and a gun who demanded the marijuana Tucker was supposedly bringing. Head was right behind the man in the mask and was armed with a silver handgun. Head and the masked man made Tucker lie on the floor and repeatedly asked him where the "weed" was. Eventually, Head gave Tucker a cell phone to call the marijuana dealer and arrange for the delivery.

Finally, Tucker decided to fight and/or flee. He was able to grab the gun from the masked man, who then yelled at Head to "Shoot him. Shoot him." (Tr. 129.)

Multiple shots were fired, one of which struck Tucker in the chin. Tucker later sought treatment at a local hospital, which resulted in his talking to a police detective. The detective had been to the Fabron Avenue residence after a neighbor made a 911 call claiming shots had been fired. The detective found evidence of a shooting and a person being wounded.

Tucker was initially slow to be truthful because he was on parole. Eventually, Tucker told police what he later stated at Head's trial.

The trial testimony of Tucker alone was more than sufficient to support the jury finding that Head was guilty of an aggravated robbery when he attempted to steal marijuana from Tucker while Head was armed with a functional firearm.

The evidence was also sufficient to support a finding of felonious assault. Tucker disarmed one of his robbers, who then yelled at Head to "[s]hoot him," meaning Tucker. The shooting started almost immediately. Head still had a firearm when the shooting started. There was no evidence indicating that anyone else was inside the house with a firearm at that time.

***

. . . . Tucker was clearly shot in the face requiring medical treatment. His story about where he got shot was supported by shell casings and blood found at the Fabron Avenue address. No other evidence about how the shooting occurred was presented to weigh against Tucker's testimony.

**2**

*State v. Head,* No. 11-AP-58, 2011 WL 3847127, at *1-2 (Ohio App. 10th Dist. Aug. 30, 2011). Petitioner was sentenced to an aggregate term of eighteen years of incarceration. *See Exhibit 8 to Motion to Dismiss.* Represented by new counsel, Petitioner timely appealed, asserting as follows:

> I. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S RULE 29 MOTION AS THERE WAS NOT SUFFICIENT EVIDENCE TO CONVICT THE DEFENDANT.
>
> I. THE TRIAL COURT VIOLATED MICHAEL L[.] HEAD'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED JUDGMENT OF CONVICTION FOR AGG. ROBBERY, ROBBERY AND [F]ELONIOUS ASSAULT WHICH WAS AGAINST THE MANIFEST WEIGHT OF [T]HE EVIDENCE AND THE FIFTH AND FORUTEENTH [sic] AMENDMENTS TO THE U.S. CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION. JUDGMENT ENTRY.

*Id*. at *1. On August 30, 2011, the Ohio Court of Appeals affirmed the trial court's judgment. *Id.* Petitioner did not file a timely appeal to the Ohio Supreme Court. On December 22, 2011, he filed a motion for a delayed appeal. *See Exhibits 15, 16 to Motion to Dismiss.* On February 22, 2012, the Ohio Supreme Court dismissed his motion for a delayed appeal. *State v. Head,* 131 Ohio St. 3d 1455 (2012).

Petitioner also pursued post-conviction relief. On August 11, 2011, Petitioner filed a petition to vacate or set aside sentence pursuant to Ohio Revised Code § 2953.21 asserting that he had been denied effective assistance of counsel because his attorney refused to present witness who would have testified to Petitioner's alibi defense. *See Exhibit 9 to Motion Dismiss.* The record does not indicate the disposition of this action.

On November 11, 2011, Petitioner filed a motion for re-sentencing, arguing that the sentences on aggravated robbery and felonious assault should be merged as allied offenses of similar import. *See Exhibit 11 to Motion to Dismiss*. On October 11, 2012, the trial court denied Petitioner's motion for re-sentencing. Petitioner did not file an appeal of this decision.

On December 17, 2012, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the evidence is constitutionally insufficient to sustain his claims and that the trial court therefore improperly denied his motion for acquittal. He also asserts that his convictions are against the manifest weight of the evidence. It is the position of the Respondent that both of these claims are procedurally defaulted and therefore must be dismissed.

**Procedural Default:**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.; Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 724; *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of Maupin). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin*, 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) a substantial reason to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id*. "Cause" under this test "must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc*, 456 U.S. 107, 135 (1892)). Petitioners who fail to show cause and prejudice for procedural default may

5

nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle*, 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Here, although he properly asserted both grounds for relief in his direct appeal to the Tenth District Court of Appeals, Petitioner failed to file a timely appeal with the Supreme Court of Ohio from the appellate court's decision. The requirement of filing a timely appeal is an applicable procedural rule which Petitioner failed to follow. Rule of Practice II of the Ohio Supreme Court, Section 2(A)(1) and 2(A)(4) which, at the time of Petitioner's appeal in this case, provided in relevant part:

> (1) (a) To perfect an appeal from a court of appeals to the Supreme Court, other than in a certified conflict case ... the appellant shall file a notice of appeal in the Supreme Court within forty-five days from the entry of the judgment being appealed. The date the court of appeals filed its judgment entry for journalization with its clerk . . . shall be considered the date of entry of the judgment being appealed . . . .
>
> (b) Except as provided in divisions (A)(2), (3), (4), (5), and (6) of this rule, the time period designated in this rule for filing a notice of appeal and memorandum in support of jurisdiction is mandatory, and the appellant's failure to file within this time period shall divest the Supreme Court of jurisdiction to hear the appeal....
>
> (4) (a) In a felony case, when the time has expired for filing a notice of appeal in the Supreme Court, the appellant may seek to file a delayed appeal by filing a motion for delayed appeal and a notice of appeal. The motion shall state the date of entry of the judgment being appealed and the reasons FN3 for the delay. Facts supporting the motion shall be set forth in an affidavit. A copy of

> the court of appeals opinion and the judgment of entry being appealed shall be attached to the motion.
>
> (b) A memorandum in support of jurisdiction shall not be filed at the time a motion for delayed appeal is filed. If the Supreme Court grants a motion for delayed appeal, the appellant shall file a memorandum in support of jurisdiction within thirty FN4 days after the motion for delayed appeal is granted....

Ohio S.Ct. Prac. R. 2, § 2.2(A)(1)(a), (1)(b), (4)(a), & (4)(b) (2010) (footnotes omitted).

Here, there is no dispute that petitioner failed to file an appeal to the Ohio Supreme Court within 45 days of the date of journalization of the decision of the appellate court. Moreover, the record demonstrates without any dispute that the Ohio Supreme Court denied petitioner's motion for delayed appeal. The Sixth Circuit has concluded that a denial of a motion for leave to file a delayed appeal is a procedural ruling rather than one on the merits. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). The court in *Bonilla* explained that the Rule regarding a motion for a delayed appeal does not require inclusion of the actual claims and supporting arguments sought to be presented on appeal. 370 F.3d at 497. Rather, it is only when the Ohio Supreme Court grants such a motion that the appellant must file a memorandum in support of jurisdiction. *Id.* at 497. "Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Id.; see also Walker v. Martin*,-- U.S. --, -- --, 131 S.Ct. 1120, 1128–29 (2011) (holding that the California Supreme Court's denial of a petition as untimely constituted a procedural default notwithstanding the fact that the court could, instead, review the petition and determine the petition was meritless, stating "[w]e see no reason to reject California's time bar simply because a court may opt to bypass the [timeliness] assessment and summarily dismiss a petition on the merits, if that is the easier path"); *Coleman*,

501 U.S. at 750 (holding that denial of a request for a delayed appeal is a procedural default without a merits review). Thus, the first factor of *Maupin* has been satisfied.

The second Maupin factor has also been satisfied. The Ohio Supreme Court necessarily enforced this procedural sanction when it denied Petitioner's motion for leave to file a delayed appeal. Although the Ohio Supreme Court did not articulate its reason for dismissing the delayed notice of appeal, federal courts are not to assume that state courts do not observe their own procedural bars, but instead must assume that state courts enforce those bars. *Simpson v. Sparkman*, 94 F. 3d 199, 203 (6th Cir. 1996) (citations omitted); *see also Barkley v. Konteh*, 240 F. Supp. 2d 708, 712 (N.D. Ohio 2002) ("By its very nature, a denial of a motion for leave to file a delayed appeal is a denial solely on procedural grounds even if the court does not expressly cite the procedural bar in its denial.").

Turning to the third prong of the *Maupin* analysis, "a federal court is generally barred from considering an issue of federal law arising from the judgment of a state court if the state judgment rests on a state-law ground that is both independent of the merits of the federal claim and an adequate basis for the state court's decision." *Stone v. Moore,* 644 F.3d 342, 345 (6th Cir. 2011) (internal quotations and citations omitted). "To qualify as an 'adequate' procedural ground, a state rule must be "firmly established and regularly followed." *Walker v. Martin*, -- U.S. --, --, 131 S.Ct. 1120, 1127 (2011) (citations omitted). The Supreme Court has held that a "rule can be 'firmly established' and 'regularly followed,' . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* at 1128 (internal quotations and citations omitted).

Following *Walker,* the issue in this situation is not how often a state court either grants or denies motions to pursue untimely appeals. Rather, the relevant question is whether

"discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law. . . ." *Walker*, 131 S.Ct. at 1130 (internal citations and quotations omitted). However, as in *Walker,* Petitioner here does not contend that the state court exercised its discretion in a surprising or unfair manner. Further, no evidence supports the conclusion that the Ohio Supreme Court did so. Thus, the Court finds that the Ohio Supreme Court's reliance on Supreme Court Rule of Practice II is an adequate and independent ground supporting its refusal to hear petitioner's direct appeal.

The fourth and final prong of the *Maupin* analysis, specifically whether there was cause for Petitioner's failure to follow the procedural rule and actual prejudice caused by the alleged constitutional error, supports a finding of procedural default. "In order to establish cause, a habeas corpus petitioner must show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla*, 370 F.3d at 498 (citation omitted). Both cause and prejudice must be shown to excuse a procedural default. *Id.* at 497 (citation omitted).

Petitioner asserts as cause for his procedural default a claim of ineffective assistance of appellate counsel based on the failure of his appellate attorney to timely notify him of the appellate court's decision denying his appeal. Petitioner states that on June 22, 2011, he received a letter from his attorney indicating that he would be notified when the appellate court issued a decision on his case. *Exhibits 2, 4.* On November 8, 2011, and after the time period to file an appeal to the Ohio Supreme Court, Petitioner states that he learned in the prison's law library that the appellate court had denied his appeal. *Exhibits 5, 6* (indicating that Petitioner received no legal mail from August 30, 2011 to December 14, 2011). On December 18, 2011,

41 days after Petitioner states that he learned of the appellate court's decision, Petitioner filed his motion for a delayed appeal. *Exhibit 6*.

"[I]gnorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse [a] procedural default." *Bonilla*, 370 F.3d at 498. However, to the extent that petitioner did not know that there was a ruling in his case because his appellate counsel failed to promptly notify him of the state court of appeals' decision, that failure could constitute ineffective assistance of counsel sufficient to demonstrate cause for the procedural default. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 432–35 (6th Cir. 2006).

Where, as here, "a [petitioner] alleges that his counsel's ineffective assistance led to 'the forfeiture of a proceeding itself' ... the [petitioner] must demonstrate that counsel's deficient performance 'actually cause[d] the forfeiture of the [petitioner's] appeal." *Smith*, 463 F.3d at 435 (internal citations and quotations omitted). Petitioner, however, cannot establish cause for his procedural default because Petitioner also waived his claim of ineffective assistance of appellate counsel by failing to present that claim to the Ohio courts. The Court of Appeals for the Sixth Circuit has held that "[a] claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for procedural default." *Id*. at 436, n.7 (citations and internal quotations omitted). Here, Petitioner failed to litigate the ineffective assistance of counsel claim in the state courts. He did not file an application to reopen his appeal under Ohio R. App. P. 26(B), which would have been the proper method of bringing an ineffective assistance of appellate counsel claim. *Id.; see also Arnold v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 583, 859 (S.D. Ohio 2011) (noting proper method to bring ineffective assistance of counsel claim is through Ohio R. App. 26(B)). Therefore, Petitioner has

procedurally defaulted his ineffective assistance of counsel claim and cannot present it here to demonstrate cause for his default of his underlying habeas claims.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992). The record fails to indicate that Petitioner can meet this standard here.

This Court concludes that Petitioner has failed to establish cause for both of the claims for federal habeas corpus relief.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 7, **be GRANTED** and that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this *Report*, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

>                            s/ *Elizabeth A. Preston Deavers*
>                            Elizabeth A. Preston Deavers
>                            United States Magistrate Judge

Date:  February 3, 2014